IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LAURIE YOUNG and AMBER MCMILLIN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CERNER CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) Case No. 06-0321-CV-W-NKL ) ) ) ) ) ) ) |

ORDER

Plaintiffs Laurie Young ("Young") and Amber McMillin ("McMillin") are former employees of Defendant Cerner Corporation ("Cerner"). Cerner considered both to be exempt employees under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, meaning that they were salaried and did not receive overtime pay for working more that 40 hours per week. Plaintiffs bring this putative representative action under the FLSA to recover overtime pay on behalf of all past and present "Staff Associates" treated as exempt by Cerner from April 14, 2003, forward. Pending before the Court is Plaintiffs' Motion for Conditional Certification of Representative Action [Doc. # 39]. For the reasons set forth below, the Motion is denied.

**I.     Factual Background**

1

Cerner is in the healthcare information technology business, providing software to more than 1,500 healthcare organizations ranging from single-doctor practices to entire countries. The company employs approximately 5,700 associates, each of whom works in various sub- and sub-sub-divisions of 17 Cerner Organization Units such as Intellectual Property (IP) Solution Sales, Client Operations, IP Knowledge and Discovery, and Functional Operations. More than 1000 Cerner associates hold a management or supervisory position.

Cerner classifies all of its employees in one of seven compensation levels, with Level 7 being the lowest tier. Plaintiff Young worked for Cerner as a Level 6 software engineer from September 2004 to October 2005. She served on a team with approximately 10 other associates. Her duties and responsibilities included writing and configuring computer code. She was expected to define client needs, provide input to functional design and engage in testing and troubleshooting. Young admits that she did not perform her job in a satisfactory manner because she did not have the skills, knowledge or experience necessary to meet the expectations of her position. She also admits that Cerner misunderstood the extent of her knowledge and experience when she was hired. She "felt like [she] had a kindergartner's level of experience . . . and was thrown into a college level . . . ." Young Depo., p. 63:11-18. Young submitted her letter of resignation on September 20, 2005.

Plaintiff McMillin worked for Cerner from November 2003 to July 2004 as a Level 7 business analyst on the Cerner Technologies Operations Team. She was required

to research, analyze and make recommendations for process changes and increasing efficiency across Cerner. Her specific job duties and responsibilities were determined in large part by the project on which she was working. For example, she was in charge of creating and launching the Cerner Technologies Virtual Binder, an internal web page used by Cerner Technologies associates. For that project, she interviewed executives and key associates to create the necessary web pages and design the website to meet each Group's needs. She was also the project manager on the Freight Analysis project, the objective of which was to determine a freight calculation that Cerner could charge its clients to ensure that Cerner did not lose or benefit from freight costs, and to examine risks before the project was deployed to eliminate or decrease risk to Cerner. Her recommendations and strategy are still being used by Cerner Technologies today.

When McMillin began working for the company in April 2001 in a different capacity than she worked at times relevant to this law suit, she received a document called "Compass Culture" during orientation which classified Level 7 and Level 6 employees, the lowest two levels, as "Staff Associates." This document is no longer used by Cerner and has not been in circulation since 2001. Other than its appearance in Compass Culture, neither Plaintiff can recall the term "staff associate" ever being used in any Cerner publication or by any Cerner personnel.

Plaintiffs seek to represent "All present or former employees of Cerner Corporation employed as Staff Associates (Level 7 and Level 6 employees) who worked over 40 hours a week and who were also treated as exempt employees under the FLSA at

any time from April 14, 2003, to the present date." Such a class would include over 4,500 current and former exempt Cerner associates who were compensated at Level 6 or 7 from April 2003 to the present. These 4,500-plus associates work in different facilities and countries and hold more than 300 different titles with diverse job duties and responsibilities. Cerner considers all members of the putative class to fall within one or more of the following FLSA exemptions: Executive, Administrative, Professional, Computer Professional, Creative Professional, and Outside Sales. Examples of members of the putative class include Dr. Prajesh Kothawala, M.D., a Medical Research Associate; Kendrick Cummings, a Sales Executive; and Michelle Fisher, Corporate Legal Counsel.

Plaintiffs request expedited court-supervised notice procedures that come with conditional certification to broaden their search for other past and present Cerner employees who may want to opt in.

## II.     FLSA Certification

Section 7 of the FLSA mandates that an employer may not subject non-exempt employees to a work week in excess of 40 hours unless the employee is compensated for her overtime with additional pay of at least one and one half times her regular hourly wage. 29 U.S.C. § 207. The Act also provides that any employer who violates this restriction "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An action to recover the overtime and liquidated damages

4

may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.*

Although the FLSA permits a kind of collective action, such an action is considerably different than a class action certified under Fed. R. Civ. P. 23. *Davis v. Novastar Mortg., Inc.*, 408 F. Supp. 2d 811, 814-815 (W.D. Mo. 2005). In an FLSA collective action, a similarly situated employee does not become a plaintiff (and is not bound by a subsequent judgement) "unless he gives his consent in writing to become such a party" in the court where the action is pending. 29 U.S.C. § 216(b). Thus, FLSA collective actions are "opt-in" rather than "opt-out." *Davis*, 408 F. Supp. at 815.

The Eighth Circuit has not yet adopted a standard for determining whether plaintiffs and the class they wish to represent are "similarly situated" but other courts in the Western District of Missouri have used a two-step approach. *See id.; Garner v. Regis Corp.*, 2004 U.S. Dist. LEXIS 29167, Case No. 03-5037-CV-SW-SWH (W.D. Mo., Aug. 5, 2004)(Order granting plaintiffs' motion for conditional certification of collective action). Reported district court cases in other circuits appear to take a similar approach. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995). This approach has been used in other circuits with opt-in collective actions under the ADEA. *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).

Under this two-step approach, a plaintiff moves for conditional certification for notice purposes early in the litigation, and defendants may move for de-certification at the close of discovery. *Davis*, 408 F. Supp. 2d at 815. Conditional certification in the first step "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.* (internal quotation omitted). Although the standard is a lenient one, plaintiffs must present more than mere allegations; i.e., some evidence to support the allegations is required. *See Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *Freeman v. Wal-Mart Stores, Inc.*, 265 F.Supp.2d 941, 944 (W.D. Ark. 2003). The burden is on the plaintiffs to demonstrate that they and the potential opt-in plaintiffs are substantially similar. *See Grayson*, 79 F.3d at 1096. Plaintiffs need show only that their positions are similar, not identical, to the positions of the potential class members. *See Hipp*, 252 F.3d at 1217.

## III. Analysis

Although Plaintiffs are required to present "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan," *Davis*, 408 F. Supp. 2d at 815, they have failed to meet even this lenient standard.

The proposed class includes "All present or former employees of Cerner Corporation employed as Staff Associates (Level 7 and Level 6 employees) who worked over 40 hours a week and who were also treated as exempt employees under the FLSA at any time from April 14, 2003, to the present date." Plaintiffs' basis for including all

6

4,500 Level 7 and Level 6 employees is a 2001 orientation document entitled "Compass Culture" that refers to all employees at the two lowest compensation levels as "staff associates." The Document further labels those at compensation Levels 5 and 4 as "Team Leaders", those at Levels 3 and 2 as "Managers" and those at Level 1 as "Directors." It then discusses what is expected from Cerner employees of different compensation levels in terms of seven "Attributes of Cerner Leaders" including "Leads Through Vision," "Passion for our Clients," etc. For example, Compass Culture states that with regard to the "Leads Through Vision" attribute, a Level 7 or 6 Staff Associate

> • Understands Cerner's Vision and how their work interlocks with and contributes to it
> • Demonstrates flexibility and openness to change
> • Actively generates creative ideas & thoughts to expedite reaching the vision
> • Recongnizes mental paradigms that prevent creative thought applies expanding thinking.

By comparison, a Level 5 or 4 Team Leader

> • Ensures all team members understand Cerner's vision and how their work interlocks with and contributes to it
> • Helps team members understand the need for change and how it will benefit them
> • Is a creative source of ideas that challenge the status quo
> • Can identify implications and document "key solution" requirements
> • Can build business case for proposed solutions.

Compass Culture does not discuss particular job duties for any position within Cerner and it has not been in use since 2001.

Plaintiffs also submit "Role Profiles" for each of their positions which purportedly describe differences within the position at different compensation levels. For example,

7

the role profile for McMillin's position of Business Analyst contains the following, as well as other, "Key Differences by Level":

> **Level 7**
> • Achieves competence and meets the performance standards of the Key Responsibilities.
> • Gathers data for strictly defined or recurring task, calculations using standard tools effectively.
> • Analyzes data and problem solves using quantitative and qualitative analysis.
>
> **Level 6**
> • Fully meets the performance standards of a Level 7, plus the following:
> • Organizes project details to present to team lead both formally and informally.
> • Emerging as go to person.
> • Proposes parameter guidelines and moves away from the recurring tasks.
>
> **Level 5**
> • Fully meets the performance standards of a Level 6, plus the following:
> • Leads project teams.
> • Makes observations and defines problem statements.
> • Filters information and makes presentations based on analysis.
> • Negotiates outcomes.

The "Key Responsibilities" referenced under Level 7 above appear earlier in the Business Analyst profile and do not distinguish between Levels 7 through 3. Listed among these "Key Responsibilities" are

> • Researches industry practices, methods, resolutions.
> • Draws relevant conclusions and makes recommendations.
> • Analyzes data, thinks critically, quantitatively and qualitatively.
> • Coordinates multiple inputs and priorities and organizes into a presentable/organized system.

It is not at all clear from these documents how the lowest two tiers of "staff associates" are distinguished in terms of their job responsibilities, especially given the fact that the

8

"Key Responsibilities" section of the profile does not distinguish between Levels 7 through 3. Moreover, a note at the bottom of the profile reads, "This Role Profile seeks to broadly define role parameters for use in performance management, recruiting, development and other processes. It cannot provide details about individual positions at Cerner." As with the "Compass Culture" handout, there is nothing in the role profiles to explain how one's position at a particular compensation level would correspond with the exemptions of the FLSA.

Cerner currently employs 1,599 Level 7 associates and 1,264 Level 6 associates, of whom it considers all but 244 exempt under the FLSA. To warrant certification of the class proffered, Plaintiffs must offer a substantial allegation that the other 2,619 current Level 7 and 6 employees, and roughly 2000 others who held the same positions at some point since April 2003, are similarly situated. But other than being paid at the same compensation levels, Plaintiffs have not alleged a single common policy or practice governing all these employees. Their job responsibilities are so varied that it is hard to conceive of a single policy that could govern them all. Indeed, Plaintiffs' job responsibilities are so dissimilar from each other's as to make their inclusion in the same class problematic. Young's position as a software engineer required her to write computer code, lead design reviews, test programs and resolve failures of specific software applications. Cerner maintains that her job description places her within the software engineers exemption at 29 CFR § 541.400. Any analysis of the merits of that claim, though not at issue at this early stage, would necessary involve a review of her job

9

description and responsibilities. But such a detailed analysis would have absolutely no bearing on McMillin's claim since the Plaintiffs do not allege that Cerner considers her to fall within the same exemption as Young. As Plaintiffs' inclusion in the same class would require two separate inquiries by the Court to resolve the merits of their case, it cannot be said that they are so similarly situated as to warrant certification as representatives of a single class.

Plaintiffs' declarations state that they performed similar duties to the other team members with whom they worked. McMillin worked with three associates; Young, with ten. Perhaps if they limited the class to these other employees who performed the same jobs as they, certification of two classes, one for each position, may have been warranted. But Plaintiffs putative class sweeps within its ambit all Level 7 and Level 6 associates whom Cerner considers exempt, regardless of what their job duties are or what exemption they allegedly fall under.

For example, if the proposed class were certified, Young and McMillin would represent Prajesh Kothawala, M.D., a Level 6 Research Associate in the LifeSciences Services Group. Dr. Kothawala interprets and synthesizes research data and documentation into written reports for internal and external use and authors manuscripts and technical reports for clients, which are frequently submitted to journals for publication. He participates in business development and client support activities and addresses client questions regarding various topics of interest, such as osteoporosis drugs. Plaintiffs would also represent Kendrick Cummings, a Level 6 Sales Executive in

10

the Technology Specialty Sales Group, who has an engineering degree from the Georgia Institute of Technology and is responsible for identifying potential purchasers of Cerner software. Cummings is the primary marketing and sales contact who interacts with clients and potential clients, traveling two to three days per week to work at client sites. He is paid a base salary plus commission, performs his job duties without direct supervision and has the authority to bind Cerner. Plaintiffs' putative class would also includes Michelle Fisher, a lawyer in Cerner's legal department who is compensated at Level 6. Fisher was hired to negotiate client contracts, including software licensing agreements, equipment and sublicensing agreements, nondisclosure agreements and development agreements. She is also engaged in providing general advice on legal and business matters, including the Health Insurance Portability and Accountability Act ("HIPAA") and Sunshine Law requests. Each of these employees would necessitate an individualized inquiry into their FLSA exemption status. None is similarly situated to Plaintiffs. Their only common ground–which is the basis for Plaintiffs' putative class–is that they are all compensated at Level 7 or Level 6. And Plaintiffs only basis for asserting that Level 7 and Level 6 associates are similarly situated is an orientation document which does not describe any job duties and which hasn't been in use since 2001.

A perusal of recent district court decisions granting and denying certification further militates against certification in this case. In *Freeman v. Wal-Mart Stores, Inc.*, the plaintiff sought certification of a class consisting of "other salaried Wal-Mart employees, below officer-level, [who] worked in excess of 40 hours per week without

11

overtime compensation." 256 F. Supp. 2d 941, 943 (D. Ark. 2003). In rejecting certification, that court held

> Plaintiff's view seems to be that all salaried Wal-Mart employees below officer level are similarly situated no matter what the nature of their duties: the employees are similarly situated simply because they claim violations of the law by the same employer. Adopting Plaintiff's position would require us to conclude that if an employer has two or more non-officer, salaried employees who allegedly are not being paid overtime as required by the Act, then a collective action would be appropriate under 216(b). On the other hand, Wal-Mart has offered affidavits indicating that the class proposed by Plaintiff includes more than 7,000 current and former employees and that there are material differences in the duties and responsibilities of those employees. Plaintiff does not dispute this, but contends that it is inappropriate to engage in such detailed analysis at this stage of the litigation. We do not agree.

*Id.* at 945. The present Plaintiffs offer a similar justification for certification, namely that everyone compensated at the same salary level as they are is similarly situated regardless of their job responsibilities. Far from promoting judicial economy, certification of such a class would require the Court to entertain myriad individualized analyses of whether employees in particular jobs were properly exempted by Cerner. Plaintiffs have pointed to no single policy that would obviate such an extensive and individualized analysis.

By contrast, the Plaintiffs in *Davis v. Novastar Mortg., Inc*., sought certification of a proposed class of "loan originators" who performed the same essential job duties and responsibilities–collecting information to complete loan applications and forwarding applications to an underwriting department for an approval decision. 408 F.Supp. 2d 811, 814 (W.D. Mo. 2005). Moreover, in *Davis,* the decision to classify all loan originators as exempt was part of a company-wide plan implemented at the direction of the company's

12

president, and nineteen loan originators chose to join in the case before notice was issued. *Id.* at 816-17. Unlike *Davis*, there is no single job description or exemption rationale at issue in the present case.

In *Boyle v. Barber & Sons, Co.*, plaintiff sought certification of a class of approximately 7-10

> [f]ormer and present nonsupervisory employees . . . who at any time since July 2000 to the present date, have performed services as operators, loaders, drillers, crushers, mechanics, or other general labor, and have been required to clock in and clock out of work on a regular basis, and during any of said times have worked in excess of forty hours in any regular pay period, but have not received overtime compensation in an amount equal to one and one-half times their regular hourly rates of pay for the hours worked in addition to the minimum required forty hour workweek.

2004 U.S. Dist. LEXIS 29168, *2-3 (W.D. Mo. 2004). In that case, plaintiff alleged that the other employees were similarly situated because all work at the same physical location; all performed manual labor related to production and delivery at the quarry; all had the same hours, 6:00 a.m. to 5:00 p.m. six days per week; all their hours were kept by a common time clock; all had the same supervisors; only one exercised any supervision over the other employees; all were paid by the same party on the same date; and all were classified as exempt even though they were required to time in and out daily. *Id.* at * 8-9. In granting conditional certification in that case, the district court distinguished *Freeman*:

> The putative class in *Freeman* involved approximately 7,000 plaintiffs from Wal-Mart stores across the nation, with different supervisors and multitudes of different duties. Such a class would be unmanageable. Here, even if all potential class members opted in, the class would only include about 10 people. Furthermore, plaintiff has alleged that all the proposed class members worked the same hours, had the same supervisors, and were given the same reasons why they were not given overtime payments.

13

*Id.* at *11.

The facts of the instant case resemble those in *Freeman* far more so than those of *Davis* or *Boyle*. Plaintiffs seek to certify a class over 4,500 employees which includes doctors, lawyers, sales representatives, and many others. They have failed to meet even their lenient burden to establish that these fellow employees are similarly situated to their own jobs as business analysts and software engineers. Because they have not alleged even the minimal requirements of a collective action under 29 U.S.C. § 216(b), certification must be denied as to the proffered class.

Finally, Plaintiffs suggested the possibility of certifying a smaller class during a recent discovery teleconference, but they have not asked for certification of a smaller, more focused class in their briefing or presented a narrower class description for the Court to consider. With no alternative currently before the Court to the broad class of all Level 7 and Level 6 associates as defined in the Plaintiffs' pending motion, the Court cannot entertain the possibility certifying a more limited class *sua sponte*.

## IV. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Conditional Certification of Representative Action [Doc. # 39] is DENIED.

s/ Nanette K. Laughrey
						NANETTE K. LAUGHREY
						United States District Judge

Dated: January 18, 2007
Jefferson City, Missouri